# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NIEVES COLON, *et al.*,

    *Plaintiffs*,

v.

RICHARD ASHBY, *et al.*,

    *Defendants*.

Civil Action No. 17-1163 (DLF)

## MEMORANDUM OPINION

    Before the Court is the plaintiffs' Motion to Remand. Dkt. 8. For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND

    This suit arises from a professional boxing match between Prichard Colon and Terrel Williams. Compl. ¶¶ 1, 10, Dkt. 16 at 25–36. The match occurred on October 17, 2015 at Eagle Bank Arena in Fairfax, Virginia. *Id.* ¶ 10. According to the complaint, the 23-year-old Prichard was an undefeated professional boxer "considered by many in the sport to be a future world champion." *Id.* ¶ 5; *see* Pls.' Mem. at 1, Dkt. 8-1. During the initial rounds of the fight, Williams allegedly "rabbit punched" Prichard, *i.e.*, he violated boxing rules by striking Prichard on the back of the neck and head, which can cause severe injury to the brain or spinal cord. *Id.* ¶ 27. In the sixth round, the referee warned Williams to stop hitting Prichard in the back of the head. *Id.* ¶ 30. In the seventh round, Williams allegedly punched Prichard in the back of the head again, and "Prichard fell to the canvas writhing in pain and holding the back of his head." *Id.* ¶ 32. The ringside doctor—Richard Ashby—then examined Prichard. *Id.* ¶¶ 32–35. According to the complaint, Prichard reported that he was dizzy and the back of his head hurt,

which are symptoms of a brain bleed, but Dr. Ashby sent him back into the ring. *Id.* ¶¶ 34–36. Shortly after the fight, Prichard collapsed and was taken to the hospital. *Id.* ¶ 39. There, he was diagnosed with a large left-sided subdural hematoma, which required an emergent hemicraniectomy to relieve the brain swelling and evacuate the blood. *Id.* Tragically, Prichard never regained consciousness and he remained in a persistent vegetative state when this suit began. *Id.* ¶¶ 1, 40.

On May 3, 2017, the plaintiffs—Prichard's parents Nieves and Richard Colon, along with Sean Bogle as "legal guardian" of Prichard's property—filed suit in the Superior Court of the District of Columbia. *Id.* at 2. The complaint asserted negligence claims against four defendants: (1) the ringside physician Dr. Ashby; (2) Dr. Ashby's practice, Family Practices Medical Services, P.C.; (3) the fight promoter Headbanger's Promotions, Inc.; and (4) the fight promoter DiBella Entertainment, Inc. *Id.* at 1–2, ¶¶ 6–9, 41–49. Dr. Ashby and Family Practices filed an answer on June 12, 2017. Ashby Answer, Dkt. 16 at 14–24. In the answer, they "admit[ted] that Family Practices Medical Services, P.C. is a professional corporation through which Dr. Ashby operates a family medicine practice." Ashby Answer ¶ 7. On June 14, 2017, without the consent of Dr. Ashby and Family Practices, Headbangers filed a notice of removal because Headbangers incorrectly believed that Dr. Ashby and Family Practices had not been served and because Headbangers was unable to contact them. Notice of Removal ¶ 18, Dkt. 1; Suppl. to Notice of Removal ¶¶ 1–3, Dkt. 6. After discovering the error on June 15, 2017, Headbangers conferred with Dr. Ashby and Family Practices and obtained their oral consent to removal. Suppl. to Notice of Removal ¶¶ 2–3; Concurrence in Removal ¶¶ 1–2, Dkt. 10.

Following removal to this Court, Headbangers moved to dismiss the complaint, Dkt. 7, and the plaintiffs moved to remand, Dkt. 8. On the plaintiffs' request, *see* Dkt. 13, the Court

stayed briefing on the motion to dismiss pending the resolution of the remand motion, *see* Minute Order of July 1, 2017. After the remand motion was fully briefed, Dr. Ashby and Family Practices moved on July 19, 2017 for leave to amend their answer. Dkt. 22. The case was reassigned to the undersigned judge on December 4, 2017. The Court then granted leave to amend the answer and ordered supplemental briefing on the remand motion. *See* Minute Order of January 18, 2018; Ashby Am. Answer, Dkt. 25.

## II. LEGAL STANDARDS

"Ordinarily, the plaintiff is entitled to select the forum in which he wishes to proceed." *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 413 (D.C. Cir. 2014). But a defendant may remove a civil action filed in state court to a federal district court that has original subject matter jurisdiction, including on the basis of diverse citizenship. 28 U.S.C. § 1441(a); *see also id.* § 1332(a). Under the forum-defendant rule, however, an "action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2); *see Neal v. Brown*, 980 F.2d 747, 747–48 (D.C. Cir. 1992) ("28 U.S.C. § 1441(b) . . . permits removal when there is complete diversity of citizenship and no defendant properly joined and served is a citizen of the state in which the action is brought."). "Citizenship is determined at the date of filing." *BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 115 F. Supp. 3d 119, 125 (D.D.C. 2015) (citing *Freeport–McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991)).

The removing party bears the burden of showing that removal is proper. *Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc.*, 48 F. Supp. 3d 53, 55 (D.D.C. 2014). When assessing a remand motion, "[c]ourts must strictly construe removal statutes, resolving any

ambiguities regarding the existence of removal jurisdiction in favor of remand." *Smith v. Hendricks*, 140 F. Supp. 3d 66, 70 (D.D.C. 2015) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107–09 (1941)); *see also Steward v. Goldman Sachs Mortg. Co.*, 206 F. Supp. 3d 131, 134 (D.D.C. 2016) ("Any uncertainty about the existence of subject matter jurisdiction should be resolved in favor of remand."). And the court "must assume all of the facts set forth by plaintiff to be true and resolve all uncertainties as to state substantive law in favor of the plaintiff." *Id.* In support of a remand motion, a plaintiff may submit affidavits to supplement the factual allegations in the complaint. *Id.*

### III. ANALYSIS

Under the forum-defendant rule, this action is not removable if any defendant "properly joined and served . . . is a citizen of the [forum] in which such action is brought." 28 U.S.C. § 1441(b)(2). The plaintiffs initially filed in the Superior Court of the District of Columbia. Removal thus turns on whether any properly joined defendants are D.C. citizens. The plaintiffs argue that two corporate defendants—Family Practices and Headbangers—are D.C. citizens. *See* Pls.' Mem. at 2. The Court need only address Family Practices to resolve the remand motion.

#### A. **Family Practices' Citizenship**

A corporation is a citizen "of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Family Practices was incorporated as a professional corporation in the District of Columbia in 1989, but it stopped filing required biennial reports and paying required fees after 2011, *see* Dkt. 1-2 at 18, 20, for which a corporation can be "administratively dissolved" by the District of Columbia, *see* D.C. Code § 29-106.01. Thus, Family Practices' articles of incorporation were revoked in 2013, well before the 2015 fight at issue here. *See* Ashby Am. Answer ¶¶ 4, 6; Revocation Certificate, Dkt.

4

17-2 at 1 (revoking Family Practices' articles as of September 16, 2013, but published on July 10, 2017).

Although Family Practices was no longer incorporated when this suit began, the plain language of the citizenship statute includes past incorporation: the statute deems a corporation a citizen of every state in which it "has been" incorporated, not in which it "is" incorporated. 28 U.S.C. § 1332(c)(1). The present perfect tense—"has been"—"denotes an act, state, or condition that is now completed or continues up to the present." Chicago Manual of Style § 5.132 (17th ed. 2017); *see also* Bryan A. Garner, Modern American Usage 802–03 (3d ed. 2009); *McManus v. McManus Fin. Consultants, Inc.*, No. 10-cv-0281, 2010 WL 4290866, at *3 (D. Nev. Oct. 20, 2010) ("The perfect tense in the English language indicates a completed action, regardless of the continuing vitality of the action. For example, 'I have been to London' says nothing of whether I am still in London today."). It is true that the present perfect tense "can in some cases imply continued vitality." *McManus*, 2010 WL 4290866, at *3. Here, however, it does not. The statutory provision uses the present tense right next door to the perfect tense, *compare* 28 U.S.C. § 1332(c)(1) ("has its principal place of business"), *with id.* ("has been incorporated"), and when a statute uses contrasting language in the very same provision, courts "presume that Congress intended a difference in meaning," *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (internal quotation marks and alteration omitted). Congress "easily could have" used the present tense, but it did not. *Baker Botts LLP v. ASARCO LLC*, 135 S. Ct. 2158, 2166 (2015). Therefore, a dissolved corporation remains a citizen of its state of incorporation for purposes of

removal.[1]  Family Practices, having been incorporated in the District of Columbia, is a D.C. citizen.

Even if Family Practices' past incorporation does not make it a D.C. citizen, Family Practices is still a D.C. citizen because its principal place of business was the District of Columbia when this suit began.  Following *Hertz Corp. v. Friend*, a corporation's principal place of business is its "nerve center," *i.e.*, "the place where a corporation's officers direct, control, and coordinate the corporation's activities."  559 U.S. 77, 92–93 (2010).  The D.C. Circuit has not weighed in conclusively on whether a dissolved or inactive corporation has a principal place of business, and the other federal circuit courts are split.  The Eleventh and Third Circuits maintain a bright-line rule that an inactive or dissolved corporation has *no* principal place of business.  *See Holston Invs., Inc. v. Lanlogistics Corp.*, 677 F.3d 1068, 1070–1071 (11th Cir. 2012); *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995).  According to the Eleventh Circuit (the only circuit to address the issue since *Hertz*), a bright-line rule best aligns with the Supreme Court's guidance to apply simple jurisdictional tests.  *See Holston*, 677 F.3d at 1071 (citing *Hertz*, 559 U.S. at 1193–94).

Other circuits, however, do not adhere to such a rule.  The Second Circuit holds that an inactive corporation's principal place of business is where it last transacted business.  *See Circle Industries USA v. Parke Const. Group*, 183 F.3d 105, 105–108 (2d Cir. 1999).  Similarly, the

---

[1] *See McManus*, 2010 WL 4290866, at *3 (reaching the same conclusion based on a similar "textual analysis of the diversity statute").  *But see SAU No. 59 v. Lexington Ins. Co.*, No. 09-cv-0168, 2009 WL 3300147, at *2–3 (D.N.H. Oct. 13, 2009) (acknowledging that "it is conceivable that Congress could have intended precisely the result that follows" from reading the citizenship statute to include past incorporation, but nevertheless rejecting that reading because the court "f[ound] nothing in the legislative history of the corporate citizenship provision to suggest that this is so" and because that reading "is inconsistent with the overarching purpose that the diversity statute was intended to serve").

Fourth Circuit performs a "case-by-case" assessment, in which "a court must analyze the facts of each case to determine . . . whether a corporation's business activity was sufficient to make it a citizen of the state of such activity," *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999). The Fifth Circuit also performs a "case-by-case" assessment in which "the place of an inactive corporation's last business activity [may be] relevant to determine its principal place of business, [but] it is not dispositive." *Harris v. Black Clawson Co.*, 961 F.2d 547, 551 & n.10 (5th Cir. 1992). And in circuits that have not directly addressed the issue, some district courts have recently concluded—even after *Hertz*—that dissolved corporations may still have a principal place of business. *See, e.g.*, *Pratt v. Green Bay Distributors, Inc.*, No. 17-cv-2809, 2017 WL 4250111, at *2 (S.D. Ind. Sept. 26, 2017); *Murabito v. Stericycle, Inc.*, No. 14-cv-4771, 2015 WL 1061979, at *2 (N.D. Cal. Mar. 10, 2015); *Caterpillar Fin. Servs. Corp. v. Peoples Nat. Bank*, No. cv-10-0298, 2012 WL 2520922, at *1 n.1 (S.D. Ill. June 28, 2012), *aff'd*, 710 F.3d 691 (7th Cir. 2013); *see also* Nicholas W. Roosevelt, Note, *Digging Up the Corp(ses):* Holston Investments v. Lanlogistics Corp. *and the Continuing Struggle to Determine the Citizenship of Dissolved and Inactive Corporations for the Purposes of Diversity Jurisdiction*, 109 Nw. U. L. Rev. 243, 247 (2014) (analyzing the circuit split and concluding that *Hertz* best accords with "a slightly modified version of the Second Circuit's rule, which would make dissolved and inactive corporations citizens of both their state of incorporation *and* their last 'nerve center'").

Here, it is most consistent with the citizenship statute and Supreme Court guidance to conclude that Family Practices' principal place of business was the District of Columbia when this suit was filed, for at least three reasons. First of all, Family Practices allegedly maintained a "principal place of business" within the plain meaning of the statute and *Hertz*. *See* 28 U.S.C.

7

§ 1332(c)(1); *Hertz*, 559 U.S. at 92–93 (a corporation's principal place of business is its "nerve center"). Even though Family Practices was administratively dissolved in 2013, the plaintiffs allege that Family Practices maintained an actual principal place of business in the District of Columbia when the complaint was filed. Compl. ¶ 7. As further support, the plaintiffs point to (1) Dr. Ashby's use of a Family Practices' fax cover sheet when communicating with the Virginia Department of Professional Responsibility in 2016, *see* Dkt. 15-5 at 1; (2) the Virginia Board of Medicine's listing for Dr. Ashby as working at "Family Practices Medical Services" in the District of Columbia as of 2017, *see* Dkt. 15-2 at 3, 5; and (3) Dr. Ashby's LinkedIn page publicizing himself as "Director at Family Practices Medical Services, P.C." in the "Washington, D.C. metro area" continuously from 1989 to the present, *see* Dkt. 15-3 at 1; Dkt. 15-1 at 1.

Despite the opportunity to amend its answer following removal, Family Practices does not explicitly deny the allegation that it remained in business after 2013. *See* Ashby Am. Answer ¶¶ 4, 6–7; Ashby Opp'n at 2–3, Dkt. 17; Headbangers Suppl. Reply at 5 n.1, Dkt. 29. Instead, Family Practices merely reiterates that its articles of incorporation were revoked in 2013, a fact that primarily informs whether Family Practices has a state of incorporation under the citizenship statute, but does not establish whether Family Practices continued to carry on business after 2013. *See* Ashby Am. Answer ¶¶ 4, 6–7; Ashby Opp'n at 2–3. Thus, faced with credible allegations that Family Practices in fact maintained a principal place of business in the District of Columbia when this suit was filed, Family Practices has not carried its burden of showing the contrary.

Second, under the "dual citizenship" imposed by the citizenship statute, the default rule is that a corporation "is a citizen both of the state of its incorporation and the state where it has its principal place of business" in order to ensure that truly local cases remain in local courts. 28

U.S.C. § 1332(c)(1); *Guerrero v. Katzen*, 571 F. Supp. 714, 722 (D.D.C. 1983). But if a dissolved corporation like Family Practices sheds both its state of incorporation *and* its principal place of business, it would lack any state citizenship for purposes of diversity and removal jurisdiction. This would be inconsistent with the citizenship statute because "under such a rule a defunct corporation, no matter how local in character, could remove a case to federal court." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 141 (2d Cir. 1991). And the opportunity to remove to federal court is particularly inappropriate for a dissolved corporation—like Family Practices—that lost its articles of incorporation yet allegedly continued carrying on a truly local business. If permitted to remove whenever sued in a local forum, such a corporation would benefit from its own failure to comply with the forum's incorporation requirements and would enjoy increased opportunities for jurisdictional manipulation, "thereby subverting a major reason for the insertion of the 'principal place of business' language in the [citizenship] statute." *Hertz*, 559 U.S. at 97.

Third, although the Supreme Court in *Hertz* emphasized the importance of simple jurisdictional tests (and the Eleventh Circuit's no-principal-place-of-business rule is undoubtedly straightforward), the Supreme Court gave other guidance as well. In particular, the Supreme Court directed lower courts to determine a principal place of business by looking through formalities to determine the corporation's *actual* nerve center, *i.e.*, its "*actual* center of direction, control, and coordination." *Hertz*, 559 U.S. at 93 (emphasis added); *see also id.* at 97 ("[I]f the record reveals attempts at manipulation[,] the courts should instead take as the 'nerve center' the place of *actual* direction, control, and coordination." (emphasis added)). Here, the plaintiffs allege that Family Practices maintained an actual principal place of business when this suit was filed. Consistent with *Hertz*, that allegation carries the day unless Family Practices shows the

9

contrary, which it has not. Because Family Practices' principal place of business was the District of Columbia when this suit began, Family Practices is a D.C. citizen for purposes of removal.

### B. Fraudulent Joinder

Even so, the defendants argue that Family Practices is not "properly joined," 28 U.S.C. § 1441(b)(2), because Family Practices was fraudulently joined to defeat removal. *See* Ashby Opp'n at 3, Dkt. 17; Headbangers Opp'n at 3–7, Dkt. 12. "The defendant claiming fraudulent joinder bears a heavy burden"—it "must show that there is *no possibility* that the plaintiff can establish a cause of action or right to relief against the [defendant who would otherwise defeat jurisdiction]." *Simon v. Hofgard*, 172 F. Supp. 3d 308, 315 (D.D.C. 2016) (emphasis added and internal quotation marks omitted); *accord Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc.*, 959 F. Supp. 2d 166, 170 (D.D.C. 2013) ("Fraudulent joinder only arises if . . . the district court finds that there is no possibility of a valid cause of action being set forth against the in-state defendant." (internal quotation marks omitted)). It remains possible for a plaintiff to establish a cause of action or right to relief against a defendant "so long as the plaintiff's claim is not wholly nonsensical." *Simon*, 172 F. Supp. 3d at 315.

"As such, the District Court's role in this context is a limited one." *Boyd v. Kilpatrick Townsend & Stockton, LLP*, 79 F. Supp. 3d 153, 157 (D.D.C. 2015). When determining whether joinder is fraudulent, "a court must assume all of the facts alleged by the plaintiff to be true and resolve all uncertainties as to state substantive law in the plaintiff's favor." *Simon*, 172 F. Supp. 3d at 315–16. The court "must not delve into the legal and factual thicket of a merits analysis" but rather "confine[s] its inquiry to whether, on the basis of the claims pled, the plaintiff has shown even a slight possibility of relief." *Boyd*, 79 F. Supp. 3d at 157.

10

To show that the plaintiffs cannot establish a cause of action against Family Practices, the defendants first argue that Family Practices "does not currently exist" due to its administrative dissolution, and "[t]here is no legal way for [p]laintiffs to seek or gain recovery from a non-existent entity." Headbangers Opp'n at 7; *see also* Ashby Opp'n at 2–3. A corporation's capacity to be sued is determined "by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). Thus, "state corporate law determines the suability of a dissolved corporation," and "federal courts should look to state law in order to determine whether a [dissolved] corporation is extant at the time a suit is filed against it." *Ripalda v. Am. Operations Corp.*, 977 F.2d 1464, 1468 (D.C. Cir. 1992); *accord XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 66 (D.D.C. 2015). Under D.C. law, an "entity that is dissolved administratively *continues its existence* as an entity . . . ." D.C. Code § 29-106.02(c) (emphasis added); *cf.* D.C. Code § 29-312.05(a), (b)(5) (In the context of *voluntary* dissolution, a "dissolved corporation continues its corporate existence" and dissolution "shall not . . . [p]revent commencement of a proceeding . . . against the corporation."). Therefore, Family Practices remains a suable entity despite its administrative dissolution.[2]

---

[2] Despite the plain language of D.C. law, the defendants maintain that Family Practices is not a suable entity because the District of Columbia prohibits dissolved corporations from carrying on usual business. *See, e.g.*, Headbangers Suppl. Reply at 3–4, Dkt. 29. It is true that an administratively dissolved corporation "shall not carry on any activities or affairs except as necessary to wind up its activities," D.C. Code Ann. § 29-106.02(c), and a dissolved corporation is "shorn of all its powers and rights, save those expressly reserved by the statute for the purpose of winding up its affairs," *Accurate Const. Co. v. Washington*, 378 A.2d 681, 684 (D.C. 1977)). Family Practices' "powers and rights" as a dissolved corporation, however, are hardly the same as its *duties* and *suability* as an entity that "continues its existence" after dissolution. D.C. Code § 29-106.02(c). The defendants' argument would perversely immunize a corporation that continues carrying on business despite dissolution—*i.e.*, a corporation demonstrably unable to follow legal requirements.

11

Even if Family Practices is a suable entity, the defendants further argue that the plaintiffs cannot establish any cause of action against Family Practices because (1) Family Practices was not a party to the ringside-physician contract between the fight promoters and Dr. Ashby; (2) Prichard was never a patient of Family Practices; and (3) an agency relationship could not possibly exist between Dr. Ashby and Family Practices, a "non-existent" corporate entity. *See, e.g.*, Ashby Opp'n at 17; Headbangers Surreply at 7–8, Dkt. 21. But as discussed above, Family Practices remains suable. And the defendants' other arguments "turn on questions—*e.g.*, whether and to what extent [Dr. Ashby] acted as an agent for another party, and the nature of that agency relationship—that bear too closely on a merits determination, which is not appropriate as part of the fraudulent joinder analysis." *Simon*, 172 F. Supp. 3d at 320 (quotation marks omitted). The plaintiffs allege that Dr. Ashby operated Family Practices, provided medical care under its auspices, and—during the events at issue in this case—was practicing medicine in the scope of his employment or as an agent or apparent agent of Family Practices. *See* Compl. ¶¶ 6–7; *see also supra* p. 8 (identifying "further support" that Dr. Ashby and Family Practices maintained a relationship through 2017); Pls.' Reply at 4, Dkt. 15 (identifying numerous legal and factual issues related to their relationship unsuited for resolution at this stage). On these allegations, the plaintiffs' claims are far from "wholly nonsensical," and there remains at least a possibility that the plaintiffs can establish a cause of action or right to relief against Family Practices. *Simon*, 172 F. Supp. 3d at 315. Family Practices was not fraudulently joined. *See id.*

Under the forum-defendant rule, therefore, Family Practices is a properly joined defendant that is a citizen of the forum in which this action was brought, the District of

Columbia. *See* 28 U.S.C. § 1441(b)(2). Accordingly, this action "may not be removed" to this Court, and the Court will remand the action to the District of Columbia. *Id.*[3]

### C. Costs and Expenses

Finally, the plaintiffs request costs and expenses. Pls.' Mot. at 1, Dkt. 8. Under the removal statute, a district court remanding a case may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances," however, a district court may do so "only if 'the removing party lacked an objectively reasonable basis for seeking removal.'" *Knop v. Mackall*, 645 F.3d 381, 382 (D.C. Cir. 2011) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). A basis for removal is objectively reasonable when it "has at least some logical and precedential force," *id.* at 383, but not when it is "contrary to contrary to well-settled law or foreclosed by binding authority," *Boyd v. Kilpatrick Townsend & Stockton LLP*, No. 14-cv-0889, 2015 WL 13173226, at *1 (D.D.C. May 28, 2015) (internal quotation marks omitted).

The defendants had an objectively reasonable basis for seeking removal. As discussed above, the federal circuit courts are split on the citizenship of administratively dissolved corporations, and the D.C. Circuit has not weighed in conclusively. *See supra* Section III.A.

---

[3] The parties also dispute whether Headbangers is a D.C. citizen based on its principal place of business. On one hand, Headbangers asserts that its principal place of business is Maryland. Headbangers' two directors, Barry and Cologne Hunter, are married. Hunter Decl. ¶ 2, Dkt. 12-4. In a declaration well-tailored to the *Hertz* "nerve center" test, Cologne Hunter states that "[a]ll of the business decisions regarding the direction, control and coordination of Headbangers" are made at the Hunters' home in Maryland. Hunter Decl. ¶ 7, Dkt. 12-4; *see also Hertz,* 559 U.S. at 92–93. On the other hand, the plaintiffs assert that the District of Columbia is Headbangers' actual principal place of business. Headbangers' website states that Headbangers is "[b]ased in Washington, DC." Dkt. 8-4 at 2. And according to the plaintiffs, the real business of Headbangers occurs at its boxing gym in the District of Columbia, a "massive complex where Barry Hunter works on a daily basis to train and promote boxers." Pls.' Reply at 6–7. Regardless, the Court does not resolve this dispute because Family Practices' D.C. citizenship is enough to defeat removal.

13

Furthermore, the caselaw has not entirely accounted for how *Hertz* informs the citizenship analysis. *See id.* Therefore, the defendants' arguments—although ultimately unsuccessful—had at least some logical and precedential force. Costs and expenses are not warranted. *See Knop v. Mackall*, 645 F.3d at 382.

## CONCLUSION

For the foregoing reasons, the Court grants the plaintiffs' Motion to Remand, Dkt. 8, but denies the plaintiffs' request for costs and expenses under 28 U.S.C. § 1447(c). Also, because the Court remands this action, the Court denies as moot Headbangers' Motion to Dismiss. Dkt. 7. A separate order consistent with this decision accompanies this memorandum opinion.

                                                                                                      _____
                                                                                                      DABNEY L. FRIEDRICH
                                                                                                      United States District Judge

Date: June 8, 2018